# EXHIBIT A



Judicial Links | eFiling | Help | Contact Us | Print     GrantedPublicAccess **Logoff CJONES1068**

**1946-CC00255 - FORREST ALBIN ET AL V RESORT SALES MISSOURI, ET AL (E-CASE)**

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |
|---|---|---|---|---|---|---|---|---|

This information is provided as a service and is not considered an official court record.

[Click here to eFile on Case](#)
**Click here to Respond to Selected Documents**

**Sort Date Entries:** ○ Descending   ○ Ascending

**Display Options:** All Entries ▼

---

**12/03/2019** ☐ **Summons Issued-Circuit**
Document ID: 19-SMCC-609, for SPINNAKER RESORTS, INC.

☐ **Summons Issued-Circuit**
Document ID: 19-SMCC-608, for RESORT SALES MISSOURI, INC.

**12/02/2019** ☐ **Filing Info Sheet eFiling**
**Filed By:** M SCOTT MONTGOMERY

☐ **Pet Filed in Circuit Ct**
Petition; Exhibit A - Contract; Exhibit B - Spreadsheet.-tm
**On Behalf Of:** FORREST ALBIN, KATHERINE ALBIN

☐ **Judge Assigned**

---

Case.net Version 5.14.0.17     [Return to Top of Page](#)     Released 11/25/2019

Electronically Filed - Taney - December 02, 2019 - 03:50 PM

**IN THE CIRCUIT COURT OF TANEY COUNTY, MISSOURI**

| | | |
|---|---|---|
| **FORREST ALBIN and** | ) | |
| **KATHERINE ALBIN,** | ) | |
| **husband and wife,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:** |
| | ) | |
| **RESORT SALES MISSOURI, INC.** | ) | |
| **Serve Registered Agent:** | ) | |
| Scott R. Wuest | ) | |
| 700 Blue Meadows Road | ) | |
| Branson, MO 65616 | ) | |
| | ) | |
| **SPINNAKER RESORTS, INC.** | ) | |
| **Serve Registered Agent:** | ) | |
| Missouri Secretary of State | ) | |
| 600 W. Main Street | ) | |
| Jefferson City, MO 65102 | ) | |
| | ) | |
| **Defendants.** | ) | |

**PETITION AND CLASS ACTION PETITION**

COMES NOW Plaintiffs, by and through undersigned counsel, and for their Petition against Defendants, states:

**GENERAL ALLEGATIONS COMMON TO ALL COUNTS**

1. Defendant Resort Sales Missouri, Inc., (hereinafter "Resort Sales") is a corporation, having its principal place of business in Branson, MO, and may be served as stated above.

2. Defendant Spinnaker Resorts, Inc. (hereinafter "Spinnaker") is a corporation authorized to do business in Missouri and may be served as stated above.

3. At all times herein mentioned, all Defendants were co-conspirators, agents, servants, employees, and joint-venturers of each other and were acting within the course and scope

of said conspiracy, agency, employment, and/or joint-venture and with the permission and consent of each other.

4. That all relevant transactions to this Petition occurred in the County of Taney, State of Missouri.

5. That this Court has subject matter jurisdiction over this action pursuant to Chapter 407 RSMo, which allows for a private cause of action for breaches of the Merchandising Practices Act.

6. That the Merchandising Practices Act, § 407.025 RSMo, provides for a private cause of action, punitive damages, and attorney fees to a successful party who invokes its protections.

7. That the Merchandising Practices Act, § 407.010 RSMo, includes in the definition of "merchandise" the term service.

8. That Defendants are a timeshare sales company, that provide vacation services to the public.

<u>**COUNT I – VIOLATIONS OF THE MISSOURI MERCHANDISING**</u>

<u>**PRACTICES ACT**</u>

COME NOW Plaintiffs Forrest Albin and Kathleen Albin, (hereinafter "Plaintiffs Albin") and for Count I of their Petition against Defendants state as follows:

9. Plaintiffs purchased goods and/or services covered by the Act from Defendants in Branson, Missouri on June 24, 2017.

10. According to copies of the purchase documents given to Plaintiffs, Defendants list J. Kennedy, Maria Belbas Parker as the salespersons who received credit for the sale to Plaintiffs Albin which occurred in Branson, Missouri on June 24, 2017. A true and accurate

copy of the contract signed by Plaintiffs Albin is attached hereto as Exhibit A and is incorporated herein by reference. These individuals were agents and/or employees of Defendants and were not licensed realtors. At all times these agents/employees were acting within the scope and course of their agency/employment.

11. Defendants used high pressure sales tactics to solicit Plaintiffs Albin into purchasing a timeshare.

12. That during and after the contact with Defendants for vacation services, Defendants through its representatives and/or agents made representations to Plaintiffs Albin which amounted to deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact, including but not limited to:

    a. Defendants told Plaintiffs Albin that a Spinnaker Resorts timeshare was an investment that would increase in value.

    b. Defendants told Plaintiffs Albin they could sell their timeshare for a profit.

    c. Defendants told Plaintiffs Albin that purchasing a timeshare is cheaper than paying for future vacations.

    d. Defendants told Plaintiffs Albin they could rent their timeshare out to offset their maintenance fees.

    e. Defendants told Plaintiffs Albin they would be attending a 90-minute presentation and the presentation lasted four hours. Plaintiffs Albin were detained at the sales presentation against their will for a lengthy period of time. The extended, unreasonable, lengthy time period of the sales presentation constituted duress and

coercion to force Plaintiffs Albin to make a purchase before they were allowed to leave the premises.

f.  Defendants told Plaintiffs Albin they could travel anywhere in the world they wanted whenever they wanted.

g.  Defendants told Plaintiffs Albin they would attend an "Owner's Update" meeting and they received another high-pressure sales pitch.

h.  Defendants did not give Plaintiffs Albin detailed instructions on how to rescind or cancel their purchase if they chose to do so.

i.  Defendants showed Plaintiffs Albin one type of unit during the sales presentation, but when they went to the resort, Plaintiffs Albin received a unit of lesser quality.

j.  Defendants told Plaintiffs Albin it would be easy to make a reservation, but Plaintiffs Albin found it to be nearly impossible to make a reservation when they wanted to go to the resort.

k.  Defendants did not inform Plaintiffs Albin that the resort rents units to non-timeshare owners.

l.  Defendants told Plaintiffs Albin they would receive a discounted price on the timeshare, but "only if they purchased today".

13. On information and belief, Defendants misrepresented the benefits of buying a timeshare from them.

14. That Defendants' statements and assurances referenced in subparagraphs "a" through "l", inclusive, and/or its concealment, suppression, or omission of those issues were material to Plaintiffs Albin's decision to purchase a timeshare from Defendants.

Electronically Filed - Taney - December 02, 2019 - 03:50 PM

15. Because of the high-pressure sales tactics and the insistence that the purchase needed to be made immediately to receive the "benefits", Plaintiffs Albin were unable to independently research the claims made by Defendants.

16. That as a direct and proximate result of the misrepresentations, statements, assurances, and omissions made by Defendants, Plaintiffs Albin have suffered an ascertainable loss in the amount of $14,475.00, plus interest, plus continuing maintenance fees and obligations.

17. That the conduct of Defendants in the foregoing respects was willful, intentional, and malicious and without just cause or excuse, entitling Plaintiffs Albin to actual and punitive damages and attorney fees and costs herein incurred.

18. In addition, in purchasing this timeshare, Plaintiffs Albin paid to Defendants, and Defendants charged, a document preparation fee of $400.00 for recording of the deed, legal fees, and administrative fees to process the closing documents for purchaser and seller.

WHEREFORE, Plaintiffs Albin pray this Honorable Court hear and determine the matter and enter Judgment in favor of Plaintiffs Albin and against Defendants for actual and incidental and consequential damages, for punitive damages in an amount that is fair and reasonable, and for their attorney fees and expenses herein reasonably expended, and for such other and further relief as this Honorable Court may deem just and proper.

## COUNT II – RESCISSION

COME NOW Plaintiffs Albin, by and through counsel, and for Count II of their Petition against Defendants, state as follows:

19. Plaintiffs Albin incorporate by reference each and every preceding paragraph of this Petition as though fully set forth herein.

20. As a result of the fraudulent misrepresentations made by Defendants, by and through their agents and/or employees, as is set forth in Count I above, Plaintiffs Albin are entitled to rescind the timeshare contract, minus amounts paid in document fees, and which claims for document fees Plaintiffs Albin elect to pursue in the class claims set forth below. Plaintiffs Albin are further entitled to a reimbursement of reasonable attorneys' fees incurred by Plaintiffs Albin in bringing forth this cause of action, and in negotiating the resolution of this claim; and Plaintiffs Albin are entitled to interest and consequential damages.

WHEREFORE, Plaintiffs Albin pray this Court enter judgment in their favor against the Defendants, for an order rescinding the timeshare contract except for the document fees; trebled damages on the document fees; for damages that are fair and reasonable to restore Plaintiffs Albin to the position they were in prior to purchasing the membership from Defendants; for reasonable attorneys' fees, costs, and interest as allowed by law; and for any such other and further relief as the Court deems just and proper.

## **CLASS-WIDE ALLEGATIONS - UNAUTHORIZED PRACTICE OF LAW**

21. Defendants are not licensed attorneys in the State of Missouri as is required by § 484.020 RSMo., for Defendants to engage in law business for profit.

22. Defendants are engaged in the business of selling and/or leasing memberships, timeshare, vacation packages, and/or interests in goods or property. As part of the sales and/or leasing process, Defendants prepare and/or process deeds, purchase agreements, contracts, financing documents, and other instruments and/or documents of legal significance that affect and/or relate to secular rights and title to property. These instruments are documents of legal significance that affect or relate to the rights and title to property rights and

memberships in clubs or organizations, other secular rights, interests in timeshares and vacation packages; and are collectively referred to herein as the "documents".

23. Defendants, as a general business practice, have charged a fee for the preparation and/or processing of the documents relating to these sales, in the amount of $400.00, or similar amounts, to customers relating to transactions that involve Missouri property. Defendants refer to the fee as "document preparation fees" or "administrative processing fees" (hereinafter "document fees"). Said fees are identified charges for recording a deed, for legal fees and constitute charges for processing documents to close a sale and transfer property to purchasers. Said transactions that occur in the State of Missouri and/or which relate to Missouri property are governed by Missouri law, and Plaintiffs seek to represent all Class members whose claims are governed by Missouri law.

24. Defendants have, as a general business practice, refused to return said documentation fees to their customers, including customers who rescind their timeshare and/or membership contracts.

25. This action is brought by Plaintiffs, against Defendants, to recover for Plaintiffs, and for all others similarly situated (hereinafter "Class" or "the proposed Class"), all document fees, by whatever name, paid by Plaintiffs and the Class to Defendants, and to recover all other damages allowed by law.

26. Plaintiffs and the Class contend that it is unlawful for Defendants to collect from their customers a document fee, in that receiving consideration for the preparation and processing of legal documents by an unlicensed individual is illegal and constitutes engaged in unauthorized law business and the unauthorized practice of law. Likewise, it is illegal, unlawful, and deceptive for Defendants to charge Plaintiffs and the Class for

Defendants' legal fees in a transaction in which Plaintiffs and the Class members are on the opposite side of the transaction.

27. Plaintiffs and the Class further contend that Defendants are legally obligated to provide a refund to Plaintiffs, and to all Class members, all document fees charged and collected by Defendants on all transactions and to pay, in addition statutory treble damages, the attorneys' fees incurred by customers herein, prejudged and post-judgment interest, costs, and punitive damages.

28. For the reasons stated in more detail below, this case is properly brought as a class action, represented by the named Plaintiffs.

29. At the time of Plaintiffs Albin' purchase set forth herein, Defendants charged and collected a documentation fee in the amount of $400.00 from Plaintiffs Albin in connection with Plaintiffs Albin' purchase. A copy of the contract signed by Plaintiffs Albin reflecting this document fee is attached hereto as Exhibit A.

30. Upon information and belief, the document fees were charged for the preparation, processing, and/or procuring of documents as that term is defined above, and Defendants identify said purposes in the contracts.

31. The preparation and processing of contracts and/or documents necessary to purchase property, interests in property, timeshares, memberships, vacation packages, goods, merchandise, services, and/or to effectuate a transaction for a fee and/or legal fees, is the "practice of law" business and constitutes engagement in "law business" as those terms are used and defined in RSMo. § 484.020.

32. Plaintiffs propose to represent the Class consisting of all persons or other entities who were charged and who paid a document fee to Defendants, and who entered into said contracts

in the State of Missouri and/or related to timeshares and packages relating to property in the State of Missouri (hereinafter "the Class"), and who opted out of the class certified in Darrell ("Toby") Thompson and Kathleen ("Kathy") Thompson v. Resort Sales Missouri, Inc. and Spinnaker Resorts, Inc., Taney County Case No. 1746-CC00203, and whose names are contained on attached Exhibit B.

33. The Class is believed to consist of 85 customers who were charged said document fees, the joinder of which is impracticable, and the members of the class are so numerous that it is impractical to bring all of them before the Court in this action. Moreover, the amount of damages suffered individually by each member of the Class as a result of the illegal document fee charges is so small as to make suit for its recovery by each individual member of the Class economically unfeasible.

34. Class treatment of the claims asserted herein will provide substantial benefit to both the parties and the Court system. A well-defined commonality of interest in the questions of law and fact involved affect all Plaintiffs and the proposed members of the Class.

35. There are common questions of law and fact applicable to the claims asserted on behalf of the Class. The common questions include:

    a. Whether Defendants charge document fees for the preparation or processing of documents;

    b. Whether charging a document fee for the preparation of documents required by Defendants to effectuate a transaction constitutes the unauthorized practice of law or law business within the meaning given those phrases under Missouri law;

    c. Whether this action is maintainable as a Class Action;

    d.  Whether member of the Class have a right to recover the document fees paid to Defendants;

    e.  Whether Defendants are bound by the provisions of RSMo. § 484.020;

    f.  Whether the members of the Class are entitled to treble damages;

    g.  Whether Defendants have engaged in fraud, unfair practices, material omissions, and/or deceptive practices as defined under the law; and

    h.  Whether Plaintiffs are entitled to common law remedies implied in contract, including money had and received.

36. Plaintiffs' claims are typical of the claims of the proposed Class, and Plaintiffs will fairly and adequately represent and protect the interests of the proposed Class. Plaintiffs do not have any interest antagonistic to those of the Class. Plaintiffs have retained competent and experienced counsel in the prosecution of this type of litigation. The questions of law and fact common to the members of the Class, some of which are set out above, predominate over any questions affecting only individual members of the Class.

37. A Class Action is superior to other available methods for the fair and efficient adjudication of this controversy, because members of the Class likely number in the thousands and individual joinder is impracticable. The expenses and burden of individual litigation regarding these illegal document fee charges would make it impracticable or impossible for proposed members of the Class to prosecute their claims individually. Trial of Plaintiffs' claims is manageable.

38. Unless a Class is certified, Defendants will retain monies unlawfully received as a result of their schemes to collect fees from Plaintiffs and the Class. Unless a class-wide

Electronically Filed - Taney - December 02, 2019 - 03:50 PM

injection is issued, Defendants will continue to commit such violations against customers, there being no adequate remedy at law available to stop Defendants' actions.

39. This action is maintainable as a class action pursuant to Missouri Law.

## CLASS COUNTS

## COUNT I: DAMAGES FOR VIOLATION OF RSMo. § 484.010, *et seq.*

COME NOW Plaintiffs, individually and on behalf of all Class members, and for Count I of their Class Petition against Defendants, state and aver the following:

40. Plaintiffs hereby incorporate by reference all preceding paragraphs of this Petition as though fully set forth herein.

41. RSMo. § 484.010 prohibits any entity, association, or corporation, except a professional corporation organized pursuant to the provisions of RSMo. Chapter 356, from engaging in the practice of law or doing law business, and further provides that any association or corporation that violated this prohibition shall be subject to paying treble the amount paid to it for any services rendered in violation of this prohibition.

42. Defendants are prohibited from engaging in the practice of law or doing law business.

43. Defendants charge its customers a document fee for the preparation, processing, and procuring of documents necessary to effectuate its sales.

44. By charging a document fee to its customers, Defendants have engaged in unauthorized law business, and are therefore liable to each customer to whom they charged such document fees.

45. By charging document fees to their customers, Defendants have engaged in the doing of law business and are liable for treble damages to each such customer whom it charged such document fees within two (2) years prior to the date of the filing of Plaintiff's Class Action

Petition; and actual damages, consequential damages, and interest thereon to customers who were charged such fees within five (5) years of the filing of this Petition, up to the present.

46. The conduct of Defendants was outrageous, malicious, corrupt, and either intentional or reckless to a degree sufficient to support an award of punitive damages against Defendants.

WHEREFORE, Plaintiffs and the Class pray for the relief requested in the Request for Relief set forth below.

## CLASS COUNT II - UNAUTHORIZED PRACTICE OF REALTY

COME NOW Plaintiffs, individually and on behalf of all Class members, and for Count II of their Class Petition against Defendants, state and aver the following:

47. Plaintiffs hereby incorporate by reference all preceding paragraphs of this Petition as though fully set forth herein.

48. Defendants, and its agents/employees engaged in the unauthorized practice of realty in violation of §339.010 RSMo by engaging in the following activities, for compensation, with regard to the transactions involving Plaintiffs:

    a.  Selling, exchanging, purchasing, renting or leasing of real estate;

    b.  Offering to sell, exchange, purchase rent or lease real estate:

    c.  Negotiating or offering or agreeing to sell, exchange, purchase, rent or lease real estate;

    d.  Listing or offering to list real estate for sale, lease, rental or exchange;

    e.  Assisting or directing in the procuring of prospects calculated to result in the sale, exchange, leasing or rental of real estate.

49. The "timeshare interests" sold by Defendants to Plaintiffs constitute "real estate" as defined by §339.010.5.

50. Defendants and their agents/employees did not possess a real estate license.

51. As a result of Defendants' wrongful conduct, Plaintiffs were fraudulently induced into entering into contracts with unlicensed persons or entities and suffered an ascertainable loss of money.

52. By engaging in the unauthorized practice of realty, Defendants have engaged in unauthorized activity, and are therefore liable to each customer with whom they dealt.

53. The conduct of Defendants was outrageous, malicious, corrupt, and either intentional or reckless to a degree sufficient to support an award of punitive damages against Defendants.

54. Plaintiffs propose to represent the Class consisting of all persons or other entities who were subjected to the unauthorized practice of realty by Defendants, and who entered into said contracts in the State of Missouri and/or related to timeshares and packages relating to property in the State of Missouri (hereinafter "the Class").

55. The Class is believed to consist of thousands of customers who were subjected to the unauthorized practice of realty by Defendants, the joinder of which is impracticable, and the members of the class are so numerous that it is impractical to bring all of them before the Court in this action. Moreover, the amount of damages suffered individually by each member of the Class as a result of the illegal and unauthorized practice of realty is so small as to make suit for its recovery by each individual member of the Class economically unfeasible.

56. Class treatment of the claims asserted herein will provide substantial benefit to both the parties and the Court system. A well-defined commonality of interest in the questions of law and fact involved affect all Plaintiffs and the proposed members of the Class.

57. There are common questions of law and fact applicable to the claims asserted on behalf of the Class. The common questions include:

    a. Whether Defendants engaged in the sale, exchange, purchase, rent or lease of real estate for compensation;

    b. Whether Defendants offered to sell, exchange, purchase, rent or sell real estate for compensation;

    c. Whether Defendants negotiated or offered or agreed to sell, exchange, purchase, rent or lease real estate for compensation;

    d. Whether Defendants listed or offered to list real estate for sale, lease, rental or exchange for compensation;

    e. Whether Defendants assisted or directed in the procuring of prospects calculated to result in the sale, exchange, leasing or rental of any real estate for compensation;

    f. Whether this action is maintainable as a Class Action;

    g. Whether member of the Class have a right to recover damages caused by Defendants;

    h. Whether Defendants are bound by the provisions of RSMo. § 339.010;

    i. Whether Defendants have engaged in fraud, unfair practices, material omissions, and/or deceptive practices as defined under the law; and

    j. Whether Plaintiffs are entitled to common law remedies implied in contract, including money had and received.

58. Plaintiffs' claims are typical of the claims of the proposed Class, and Plaintiffs will fairly and adequately represent and protect the interests of the proposed Class. Plaintiffs do not have any interest antagonistic to those of the Class. Plaintiffs have retained competent and experienced counsel in the prosecution of this type of litigation. The questions of law and fact common to the members of the Class, some of which are set out above, predominate over any questions affecting only individual members of the Class.

59. A Class Action is superior to other available methods for the fair and efficient adjudication of this controversy, because members of the Class likely number in the thousands and individual joinder is impracticable. The expenses and burden of individual litigation regarding these illegal document fee charges would make it impracticable or impossible for proposed members of the Class to prosecute their claims individually. Trial of Plaintiffs' claims is manageable.

60. Unless a Class is certified, Defendants will retain monies unlawfully received as a result of their schemes to subject Plaintiffs and the Class to their unauthorized practice of realty. Unless a class-wide injunction is issued, Defendants will continue to commit such violations against customers, there being no adequate remedy at law available to stop Defendants' actions. An injunction is authorized under §339.180 RSMo.

61. This action is maintainable as a class action pursuant to Missouri Law.

WHEREFORE, Plaintiffs and the Class pray for the relief requested in the Request for Relief set forth below.

## CLASS COUNT III: DAMAGES FOR VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT

COME NOW Plaintiffs, individually and on behalf of all Class members, and for Count III of their Class Petition against Defendants, state as follows:

62. Plaintiffs hereby incorporate by reference all preceding paragraphs of this Petition as though fully set forth herein.

63. RSMo. § 407.010 *et seq.* (The Missouri Merchandising Practices Act) makes unlawful the use of deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of a material fact in connection with the sale of goods or merchandise. Plaintiffs purchased goods or merchandise from Defendants, to include a timeshare membership.

64. The charging of a document fee to Defendants' customers, not allowed by law, was deceptive or unfair in violation of 407.010 *et seq.* The charging of document fees to Defendants' customers was a result of Defendants' misrepresentations, concealment, and omissions of material facts.

65. The charging of document fees constitutes unauthorized law business and is a *per se* deceptive practice under the laws of Missouri.

66. As referenced above, Defendants engaged in the unauthorized practice of realty, thereby defrauding and deceiving Plaintiffs.

67. Defendants engaged in sales practices that were deceptive, misleading, unfair, fraudulent, and unreasonable. Defendants omitted, concealed, and/or suppressed material facts during the sale of goods and merchandise to their customers.

68. As a result of Defendants' actions, Plaintiffs and the Class suffered ascertainable loss.

69. Defendants' conduct was outrageous, malicious, corrupt, and intentional and/or reckless to a degree sufficient to support an award of punitive damages against Defendants.

WHEREFORE, Plaintiffs and the Class pray for the relief requested in the Request for Relief set forth below in this Class Petition.

## CLASS COUNT IV: MONEY HAD AND RECEIVED

COME NOW Plaintiffs, individually and on behalf of all Class members, and for Count IV of their Class Petition against Defendants, state as follows:

70. Plaintiffs hereby incorporate by reference all preceding paragraphs of this Petition as if fully set forth herein.

71. Defendants have received monies to which they are not entitled pursuant to their contracts with Plaintiffs and the Class members.

72. Defendants have received monies unlawfully which in equity and good conscience ought to be paid back to Plaintiffs and to the Class. Implied in contract, Plaintiffs are entitled to a return of said monies, plus other consequential damages.

73. The conduct of Defendants, by and through their agents, was outrageous, malicious, corrupt, and intentional and/or reckless to a degree sufficient to support an award of punitive damages against Defendants.

WHEREFORE, Plaintiff and the Class pray for the relief requested in the Request for Relief set forth below in this Class Petition.

## CLASS COUNT V: RESCISSION

COME NOW Plaintiffs, individually and on behalf of all Class members, and for Count V of their Class Petition against Defendants, state as follows:

74. Plaintiffs incorporate by reference each and every preceding paragraph of this Petition as though fully set forth herein.

75. As a result of the fraudulent misrepresentations made by Defendants, by and through their agents and/or employees, Plaintiffs and the Class members are entitled to rescind the timeshare contract, minus amounts paid in document fees, and which claims for document

fees Plaintiffs and the Class members have elected to pursue in the class claims set forth above. Plaintiffs and the Class members are further entitled to a reimbursement of reasonable attorneys' fees incurred by Plaintiffs and the Class members in bringing forth this cause of action, and in negotiating the resolution of this claim; and Plaintiffs and the Class members are entitled to interest and consequential damages.

WHEREFORE, Plaintiff and the Class pray for the relief requested in the Request for Relief set forth below in this Class Petition.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs and each member of the proposed Class pray for judgment against defendants:

a. Certifying the Class as requested herein;

b. Enter an order appointing Montgomery and Newcomb, LLC as lead counsel for the Class;

c. Awarding Plaintiffs and members of the proposed Class treble damages in the sum of three times the document preparation fees charged within the last two (2) years prior to filing of the original suit up to the present, and for actual damages charged prior thereto;

d. Awarding restitution to Plaintiffs and members of the proposed Class, including any interest paid or to be paid on any illegal and/or improper fees that were financed by Plaintiffs and the Class;

e. Awarding declaratory and injunctive relief as permitted by law or equity including a preliminary and permanent injunction enjoining Defendants from continuing the unlawful practices as set forth herein and directing Defendants to identify, with

Court supervision, victims of their conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

f.  Awarding punitive damages;

g.  Awarding prejudgment interest;

h.  Awarding post-judgment interest;

i.  Rescission of timeshare contracts;

j.  Awarding attorneys' fees and costs;

k.  Awarding Plaintiffs individual damages resulting from Defendants; conduct, to include the amount paid, interest thereon, punitive damages, and consequential damages resulting from Defendants' conduct set forth above; and

l.  Providing such further relief as this Court deems just and proper.

Respectfully submitted,

MONTGOMERY AND NEWCOMB, LLC

By:  _/s/ M. Scott Montgomery_
      M. Scott Montgomery
      Missouri Bar No. 42805
      W. Todd Newcomb
      Missouri Bar No. 52527
      David C. Vaughn
      Missouri Bar No. 38173
      435 E. Walnut Street
      Springfield, Missouri 65806
      Phone: 417-887-4949
      Fax: 844-468-5468
      ATTORNEYS FOR PLAINITFFS

Electronically Filed - Taney - December 02, 2019 - 03:50 PM

**Palace View South by Spinnaker**
INTERVAL OWNERSHIP
PURCHASE AGREEMENT

Contract # 537191

THIS PURCHASE AGREEMENT is made and entered into effective 14 of February, 2015, by and between Spinnaker Resorts Inc., a Florida Corporation, hereinafter referred to as "SELLER" and Forrest L Albin & Katherine M Albin hereinafter referred to as "PURCHASER", residing at 493 SE Highway U , Clinton, MO 64735 Telephone Number: 6604773838 and Resort Sales by Missouri, Inc. hereinafter referred to as "AGENT", whose address is: PO Box 6899, Hilton Head, South Carolina 29938.

WHEREAS Palace View South by Spinnaker, is a timeshare project located in BRANSON, TANEY COUNTY, MISSOURI, the boundaries, terms and conditions of which are further defined in and subject to the provisions of the Declaration of Condominium and the attendant plat of the property, both of which are subsequently filed of record in Taney County, Missouri, by Palace View South by Spinnaker.

1.PURCHASE PROPERTY: For and in consideration of the terms, covenants and agreements herein contained, Purchaser agrees to purchase a fee simple interest in the following described Unit Week(s) in Palace View South by Spinnaker.

VACATION TIMESHARE INTERVAL : 742/36 - Annual          USAGE YEAR: 2016          3 Bedroom Lock Out

Purchaser(s) agrees that if he/she is purchasing an annual year week, he/she is entitled to usage on an annual basis. Purchaser(s) acknowledges and agrees that if he/she is purchasing on an alternate year week, usage will be every other year (odd years or even years). Purchaser(s) acknowledges and agrees that he/she has been given a copy of the Quick Reference Guide that details the reservation procedures, rules and regulations.

2. PURCHASE PRICE: Subject to approval of Purchaser's credit by Seller, the purchase price for the said property shall be $22,900.00 plus a processing fee of $ 400.00 paid by Purchaser for the recording of the deed, the legal fees and administrative fees to process the closing documents for Purchaser and Seller. The Purchase Price is payable as follows:

DOWN PAYMENT: $-20,400.00          of which $-12,900.00 is EQUITY from 712/30-Even          FINANCED PORTION: $2,900.00

Down payment is due upon the execution of the Agreement, the receipt of which is hereby acknowledged. Down payment is to be held in escrow until expiration of the rescission period. Said escrow account may be interest bearing with interest to accrue to the benefit of Seller.

In the event that the Purchaser is trading in a timeshare interval to be used as "equity" in the purchase of the Property described in this Agreement, then the "equity" amount is expressly contingent upon the Purchaser executing and delivering a limited warranty deed to the Seller (or an assignee or designee of the Seller) for said timeshare interval to be used as equity for the purchase of the Property (including that the timeshare interval be conveyed by the Purchaser to the Seller free of all liens and encumbrances, and that the maintenance fees/common expenses for said timeshare interval be paid in full for the traded-in timeshare interval if it has been space-banked with an exchange company, listed with a rental department or Purchaser is to retain usage for themselves or a guest. In the event that a valid limited warranty deed for the timeshare interval is not delivered by the Purchaser to the Seller (or the assignee/designee of the Seller) in a timely manner in accordance with the terms of this section, then said contingency fails; in the event of the failure of the above described contingency, this Agreement shall be null and void, all monies paid to date by the Purchaser to the Seller shall be retained by the Seller as liquidated damages, and the timeshare interval which the Purchaser designated to be used as "equity" shall remain the property of the Purchaser.

3. RETAIL INSTALLMENT CONTRACT-DISCLOSURE STATEMENT: Financed Portion: $2,900.00 being financed by Seller over a term of 60 months at 4.90% interest with monthly installments of $ 54.59 per month, beginning 31 of March, 2015 and on the same day of each successive payment period thereafter until the whole amount is fully paid. Payments are applied first to interest, then to reduce the principal balance due. Interest will begin to accrue upon Purchaser's execution of this Agreement. Purchaser may prepay principal payments without penalty. No interest will be charged to Purchaser on the Financed Portion of the Purchase Price if the Down Payment, the Financed Portion and the Processing Fee are paid by Purchaser within 30 days of the Date of this Agreement. Purchaser acknowledges that there is an additional $ 10.00 per monthly installment due and payable as an administrative charge under the seller financing/retail installment contract.

4. ANNUAL MAINTENANCE FEE: Estimated Annual Maintenance Fee is $335.00/1 Bedroom-A; $377.00/1 Bedroom-B; $532.00/2 Bedroom; $609.00/3 Bedroom; $814/4 Bedroom.

Purchaser acknowledges and agrees that he/she, upon execution of this agreement and in accordance with Declaration creating the Palace View South by Spinnaker timeshare program, shall be obligated to pay an Annual Maintenance Fee for the PURCHASER's share of common expenses, special and regular assessments, and all costs associated with the reservation system, collection of Annual Maintenance Fees, administrative fees, licensing membership and amenity fees, and general costs and expenses incurred in the operations of Palace View South by Spinnaker If Purchaser acquired an Alternate Year Vacation Timeshare Interval pursuant to this Purchase Agreement, said Purchaser shall pay the Annual Maintenance fee on an alternate year basis (in the year of his/her use). Maintenance Fees shall be remitted to the Association or its designated agent beginning the first day of each year of ownership; provided however, that if the Purchaser shall utilize their unit and week prior to said date, the maintenance fee shall be payable in advance of such use. Failure to pay such costs and assessments may result in the loss of occupancy right and ownership rights by the Purchaser.

THE PURCHASER HEREBY WARRANTS THAT THE SALESMEN, AGENTS OR EMPLOYEES OF THE SELLER AND ITS AFFILIATES MADE NO ORAL OR WRITTEN REPRESENTATIONS THAT THE PURCHASER WOULD DERIVE ECONOMIC BENEFITS FROM APPRECIATION IN PROPERTY VALUE OR PROFITS THROUGH RENTAL, MANAGEMENT, OR OTHER FINANCIAL RETURNS FROM THE PURCHASER'S ACQUISITION OF THE TIMESHARE INTERVAL.

THE PURCHASER FURTHER WARRANTS THAT THEY ARE ACQUIRING THE TIMESHARE INTEREST SOLELY FOR PERSONAL ENJOYMENT AND USE AND THAT THIS PURCHASE IS NOT INDUCED BY OR BASED UPON AN EXPECTATION OF PROFITS FROM THE ENTREPRENEURIAL OR MANAGERIAL EFFORTS OF OTHERS.

NO PURCHASER SHOULD RELY UPON REPRESENTATIONS OTHER THAN THOSE INCLUDED IN THIS PURCHASE AGREEMENT.

THIS PURCHASE AGREEMENT is subject to the terms and conditions set forth on the reverse side hereof which by reference are made a part hereof. Receipt of a completed copy of this PURCHASE AGREEMENT is hereby acknowledged.

IN WITNESS THEREOF, the parties having hereunto set their respective hands and seals on the day and year first above written.

DATED: 14 of February, 2015

Forrest L Albin

Katherine M Albin

Accepted By: _____
Authorized Representative of Seller

SELLER:
Spinnaker Resorts Inc., a Florida Corporation

By: _____

Its _Comptroller_____

EXHIBIT
A

Electronically Filed - Taney - December 02, 2019 - 03:50 PM

**ACKNOWLEDGMENT:** The Purchaser acknowledges that he/she is informed of the following:

a) Unit Week No. 1 is the seven (7) days commencing on the first Saturday in each year. Unit Week No. 2 is the seven (7) days succeeding. Additional weeks up to and including Unit Week No. 52 are computed in like manner. Purchaser(s) Unit Week shall run from four o'clock (4:00) p.m. on the first Saturday thereof to four o'clock (4:00) p. m. on the last Saturday thereof provided however the Purchaser does hereby agree to relinquish occupancy for the last six (6) hour period of his Unit Week (from 10:00 o'clock a.m. until 4:00 o'clock p.m. on Staurday to allow for cleaning, repairs, maintenance and any other preparation needed for the occupancy of the next Unit Week.

b) The Purchaser voluntarily waives any right he/she may have to petition the applicable court for a partition of his/her timeshare interest. The Purchaser further acknowledges that he/she will be a co-tenant with the other persons having undivided ownership interest in the timeshare weeks which compromise the program. The Purchaser further acknowledges that he/she is of legal age and that he/she has received a copy of this Agreement and understands the conditions of the Agreement. Purchaser further acknowledges that this unit will not be used as his/her principal residence. The Purchaser further acknowledge that he/she will faithfully keep and comply with all of the terms and provisions of the Declaration, including the rules and regulations adopted by the Seller from time to time.

c) The Purchaser specifically acknowledges that if they have purchased a FLOAT unit/week that he/she has usage based upon a reservation system and that he/she has purchased within a particular season. The Purchaser acknowledges that he/she will be limited to usage of a Unit during the particular season and that he/she understands the usage of their purchased unit week as defined in the Quick Reference Guide. The Purchaser covenants and agrees to be bound by the provisions of this Agreement and all documents referenced herein.

d) **FURNISHINGS:** The models shown to Purchaser are for display purposes only and the unit which he/she may occupy will have furniture, appliance equipment and accent furnishings of a quality equal to those shown or used in the models.

e) **RECREATIONAL AMENITIES:** The recreational amenties for use by Palace View South, including a swimming pool and clubhouse which have been completed, are provided for a fee by Spinnaker Development Corp., Inc., pursuant to a Recreational Amenities Usage Agreement. All of the recreational amenities are completed and available for use.

**MODIFICATIONS AND CHANGES**

Palace View South by Spinnaker, LLC reserves the right to make changes in the Declaration of Condominium and By-Laws for the purpose of correcting errors in the preparation and filing of all documents. In addition, Palace View South by Spinnaker, LLC may add additional properties and Unit Weeks to the aforesaid timeshare program by filing appropriate plats and amendments to reflect the additional properties. As additional properties are added, each Unit Week Purchaser's percentage of ownership in the common elements and common surplus, as defined in the Declaration, is subject to change, provided, however, that no change, modification or addition shall in any manner affect Purchaser(s) percentage interest or ownership in his or her Unit Week.

**CLERICAL CORRECTIONS**

The Purchaser(s) hereby acknowledges, consents to, and grants to the Seller's Attorney full power to sign, execute, acknowledge, deliver and set over all documents and instruments necessary for the limited purpose of performing all necessary matters concerning the correction of typographical, technical, clerical and/or non-material errors in the documents for the purchase of the timeshare interval by the Purchaser from the Seller; this authority shall include, but not be limited to, conveyance of a substitute numbered unit or week of any "float" property within the Palace View South by Spinnaker, timeshare program (while maintaining the same size and seasonality) or the insertion or change of the closing date. This authorization to correct clerical errors shall expire and be of no further effect upon the recordation of the Limited Warranty Deed.

**MANAGEMENT AGREEMENT**

The Purchaser(s) understands and agrees, by virtue of his purchase of the aforesaid Unit Week (s), that he shall be a member of the Palace View South by Spinnaker Owners Association, Inc., organized for the purpose of operating the timeshare project, maintaining the common elements, and receiving payment of common expenses from Unit Week owners. The Purchaser specifically authorizes the Board of Directors of the above Association to enter into a Management Agreement with a management agent as provided in the above referenced Declaration, and said Purchaser ratifies and approves same and agrees to be bound by the terms and conditions of said Management Agreement.

**INTERSTATE LAND SALES FULL DISCLOSURE ACT**

This Agreement relates to property which is exempt from registration with The Department of Housing and Urban Development pursuant to Section 1710.5 of the Interstate Land Sales Full Disclosure Act. Seller represents that all roads, sewer, water, and electric services are present for the timeshare projects in which the Units are located. Seller represents that construction of the buildings, amenities and facilities for the timeshare projects where the Units are located are all complete.

**BINDING EFFECT**

This Agreement is binding upon the parties hereto and their heirs, legal representatives, successors and assigns. This Agreement will supersede any and all understandings and agreements between the parties hereto, and it is mutually understood and agreed that this Agreement represents the entire Agreement between the parties hereto, and no representations or inducements prior hereto, which are not included in and embodied in this Agreement shall be of any force and effect, and this Agreement may only be amended or modified by an instrument in writing.

**NO PETS**

Purchaser is expressly prohibited from bringing or housing any pets with him during his Unit Week or at any other time during which Purchaser may visit or be housed at Palace View South by Spinnaker or at any other Spinnaker timeshare property.

INITIALS ___ / KMH

---

**DEFAULT:** Upon the failure of Purchaser to comply with any of the terms and or conditions of this Purchase Agreement, included in any other remedies provided for herein, Seller shall have the right to cancel this Agreement and terminate Purchaser's ownership interest herein immediately, and Purchaser's usage will immediately cease. Purchaser shall be responsible if, due to default, Seller refers the account for collection to an attorney or a collection agency who is not a salaried employee, for all costs of collection permitted by applicable law, including court costs and reasonable attorney's fees.

SELLER'S RIGHT TO CANCEL CONTRACT DURING RESCISSION PERIOD: During the Purchaser's rescission period (as described at the bottom of the first page of the Contract). SELLER ALSO HAS THE OPTION, IN ITS SOLE DISCRETION, TO CANCEL THE CONTRACT AND REFUND ALL MONIES PAID TO SELLER BY PURCHASER. In the event Seller chooses to rescind the Contract, Seller shall notify Purchaser (in writing by letter postmarked during the rescission period) of Seller's exercise of its option to cancel the Contract. Upon cancellation of the Contract, Seller shall refund all monies paid by Purchaser (within 21 days of the date of the letter advising of the cancellation), and any timeshare intervals agreed to be taken in trade as equity by Seller as part of the transaction shall be returned to/conveyed back to Purchaser.

**CLOSING COSTS:** Purchaser will pay not more than $ 400.00 to Seller as fixed closing costs, in addition to the down payment. These fixed closing costs cover fees paid for document preparation and applicable recording fees. Seller will be responsible for preparation of the deed and recording of the same after the seller financing obligation is paid, in full, by Purchaser to Seller. Should Purchaser secure his own attorney to search title independently or review documentation, Purchaser shall be responsible for any fees incurred. The Purchaser understands that in the event the Purchaser cancels the Purchase Agreement and fails to return all sales materials received from Seller, then Seller shall be entitled to retain One Hundred Dollars ($100.00) from any and all refund amounts owed to the Purchaser as reasonable and proper payment for the sales materials retained by the Purchaser.

**CLOSING AND TITLE -** The closing of the transaction shall take place on or before the granting of right to use of the timeshare week to Purchaser. At the time of the closing, Purchaser shall execute all necessary documents as may be required by the closing attorney. In the event that, prior to the closing, Purchaser fails or refuses to pay any sums due to the Seller on the Purchase Price or any closing costs or other sum as may be required as set forth in this Purchase Agreement, then and in that event, Purchaser shall be in default hereunder, and Seller may, at its option, retain all amounts paid hereunder as liquidated and agreed upon damages, or pursue any other remedy at law or in equity available to it. Title shall be retained by Seller, or its trustee, as security for Purchaser's obligation herein. Upon full payment and performance of all covenants and terms of this contract. Seller shall deliver, or shall cause to be delivered, to Purchaser a general warranty deed conveying title free and clear of all encumbrances, excepting only those covenants, restrictions and easements of record or as may otherwise be set forth in the recorded plat and the Declarations. Seller reserves the right to convey title to the subject property to a third party trustee for the benefit of Purchaser, Seller and others.

**RELATED DOCUMENTATION:** The Purchaser acknowledges the following documents are available for the Purchaser(s) to inspect prior to the execution of this Purchase Agreement or that a copy has been given to the Purchaser(s) and the provisions of said documents are incorporated herein by reference and made a part of this Agreement.

a. Condominium Declaration and By-Laws
b. Operating Budget for the current year; said budget is re-evaluated annually to reflect necessary economic changes.
c. Furniture, fixture and appliance list.
d. Trust Agreement
e. Amenity Use Agreement (when applicable)
f. Quick Reference Guide detailing reservation procedures, rules and regulations.

INITIALS

# PALACE VIEW SOUTH BY SPINNAKER CONDOMINIUM
## ORIGINAL SALES CERTIFICATE
### EFFECTIVE DATE JUNE 8, 2003

This Original Sales Certificate is prepared and submitted to purchasers of condominiums within Palace View South By Spinnaker Condominium (the "Project") pursuant Sections 448.4-103 and 448.4-105 of the units and timeshare intervals Missouri Statutes.

1.  The name of the developer is Spinnaker Resorts, Inc., a Florida Corporation, (the "Developer"). The address of the Developer and the Condominium is 700 Blue Meadows Road, Branson, Missouri 65616.

2.  The Project is currently comprised of four buildings containing 128 condominium units. The Developer reserves the right to construct additional buildings as subsequent phases to the Project. Building seven (7) is comprised of four (4) stories, with 4 condominium units per floor. The two inside units on each floor are lockout units with approximately 1,860 square feet of living area, approximately 144 square feet of exterior porch area and each has three bedrooms. The two outside units on each floor are lockout units with approximately 1,560 square feet of living area, approximately 144 square feet of exterior porch area and each has two bedrooms. Construction of Units 711 through 714, inclusive, 721 through 724, inclusive, 731 through 734, inclusive, and 741 through 744, inclusive, has been completed. Building eight (8) is comprised of four (4) stories, with eight (8) condominium units per floor. The two inner most units on each floor are lockout units with approximately 1,560 square feet of living area, approximately 144 square feet of exterior porch area and each has two bedrooms. The next interior units on each floor are lockout units with approximately 655 square feet of living area and can connect to the two inner most units to make a three bedroom unit. The next interior units on each floor are one bedroom units with approximately 955 square feet of living area, 144 square feet of exterior porch area and each has one bedroom. Construction of units 811A through 814B, inclusive, 812-A through 842-B, inclusive, 813-A through 843-B, inclusive, and 814A through 844B, inclusive, have been completed. Building nine (9) is comprised of four (4) stories, with eight (8) condominium units per floor. The two inner most units on each floor are lockout units with approximately 1,560 square feet of living area, approximately 144 square feet of exterior porch area and each has two bedrooms. The next interior units on each floor are one bedroom units with approximately 605 square feet of living area and can connect to the two inner most units to make a three bedroom unit. The next interior units on each floor are one bedroom units with approximately 955 square feet of living area, 144 square feet of exterior porch area and each has one bedroom. Construction of units 911A through 941B, inclusive, 912-A through 942-B, inclusive, 913-A through 943-B, inclusive, and 914A through 944B, inclusive, has been completed. Construction of units 1011A through 1041B, inclusive, 1012-A through 1042-B, inclusive, 1013-A through 1043-B, inclusive, and 1014A through 1044B, inclusive, has been completed. Building Ten (10) is comprised of four (4) floors with eight (8) condominium units per floor. For the first, second and third floors the inner most units on each floor are lockout units with approximately 1,239 square feet of living area, approximately 200 square feet of exterior porch area and each has two bedrooms. The next interior units on each floor are one bedroom units with approximately 584 square feet of living area and can connect to the two inner most units to make a three bedroom unit. The next interior units on each floor are one bedroom units with approximately 584 square feet of living area and can connect to the outer most one bedroom units to make a two bedroom unit. The exterior units on each floor are one bedroom units with approximately 655 square feet of living area, 200 square feet of exterior porch area and each has one bedroom. The fourth floor two exterior units are the same as the first three floors. The four interior units are divided into a one bedroom unit with approximately 584 square feet that can connect to a one bedroom unit with approximately 655 square feet to make a two bedroom unit and a three bedroom unit with approximately 1,823 square feet that can connect to a one bedroom unit with 584 square feet to make a four bedroom unit.

3.  As of the date of this Sales Certificate, the project contains a total of 128 condominium units within four buildings. The Developer reserves the right to construct additional units within the Project in its discretion at future points in time. The Developer reserves the right to construct up to 242 units within the Project. The Developer is under no obligation of whatever nature to construct any additional units or phases to the Project.

4.  Ownership of units within the Project is governed by a series of documents including, but not limited to, Declaration of Condominium, Bylaws, Management Contract, Recreational Amenities Usage Agreement, Flexible Time Rules and Regulations and Initial Rules and Regulations. Pursuant to the Declaration of Condominium, all management and administrative duties associated with the operation of the Project shall be governed by a property owners association whose board of directors shall be elected periodically by all owners within the Project. The property owners association is responsible for either performing administrative and managerial tasks associated with the operation and upkeep of the Project or delegating these responsibilities to third parties. The Developer reserves the right to appoint the majority of the members of the board of directors of the property owners association for a period of time. The Declaration of Condominium additionally sets forth numerous rules and regulations regarding the establishing and structuring of a timeshare form of ownership of the condominium units. The Bylaws set forth those procedures pursuant to which condominium property owners may elect members of the association's board of directors, vote on issues to be brought before the membership and otherwise conduct association business. The Management Contract sets forth a relationship between the property owners association and the Management Company pursuant to the Management Company, for a fee, arranges for common element and exterior maintenance to the Project, and it being understood that the costs of such maintenance shall be borne by the condominium owners. The Recreational Amenities Usage Agreement sets forth an agreement between the property owner association, the Developer, Spinnaker Resorts, Inc., a Florida Corporation, and Palace View By Spinnaker Condominium Association, Inc., whereby Spinnaker Resorts, Inc., a Florida Corporation, for a fee provides the property owners with use of certain recreational amenities, including a swimming pool and a clubhouse, located within the Palace View By Spinnaker project, adjacent to the Palace View South By Spinnaker property. The Flexible Time Rules and Regulations set forth those limitations associated with the manner in which timeshare owners may reserve accommodations within the condominium. The Initial Rules and Regulations set forth those restrictions applicable to all property owners regarding their use of condominium common elements.

5.  Attached hereto as Exhibit A is the current budget for the Association. The budget reflects a good faith estimate of the expenses to be incurred based upon the past operation of the Association. The budget assumes a five percent increase in expenses over the previous year's expenses and assumes that all units within the Project pay the required common area assessments, maintenance and recreational amenity usage fees. To the extent that expenses for particular items are less than as budgeted, the Association shall have the right to re-allocate that item's available cash to other expense items. All Assessments and Maintenance Fees are subject to adjustment by Board of Directors of the property owners association. Should Developer construct additional recreational amenities which may become subject to a Recreational Amenities Usage Agreement, then costs associated with the operation, maintenance and access to such recreational amenities may be added to the budgets referenced above. The Developer is exempt from the payment of all Assessments and Maintenance Fees.

6.  The Developer currently knows of no additional expenses currently being paid by the Developer which could become at a subsequent time a common expense of the property owners association. The Developer reserves the right, however, to submit additional subsequent expenses to the condominium owners should such be required.

7.  Other than the down payment and customary closing costs due from a condominium purchaser at closing, there exists no other initial or special fees or costs collected from a purchaser of a unit within the project.

8.  The Developer provides unit purchasers with no express warranties of whatever nature associated with a purchaser's unit acquisition.

9.  Within ten days after receipt of an original sales certificate, or within five days after execution of the sale contract, whichever is longer, and before conveyance, a purchaser may cancel any contract for purchase of a unit from the declaring. Not withstanding the foregoing, Missouri statute § 407.620 provides that a purchaser of a time-share plan or time-share property has five days after the day of purchase to cancel the purchase.

10.  There are no unsatisfied judgments or pending suits against the Developer or the Property Owners Association of which the Developer has actual knowledge.

11.  All deposits made in connection with the purchase of any unit will be held in escrow for five days after receipt of the original sales certificate and will be returned to the purchaser if the purchaser cancels the contract pursuant to section 448.4-108. The Escrow Agent is Resort Sales Missouri, Inc with a current address of P.O. Box 17, Hilton Head Island, SC 29938.

12.  There are no restraints upon alienation associated with any portion of the Project or its units.

13.  The insurance coverage provided for the benefit of the Unit Owners shall be a fire insurance policy covering all units and common elements, including amenities thereon. A rider providing for the payment of replacement costs, regardless of the amount of insurance allocated to the building or individual units, shall be made a part of this policy. A liability insurance policy shall also be provided in the amount of $1,000,000, including medical payments, for any injuries occurring on the common elements or the units.

Electronically Filed - Taney - December 02, 2019 - 03:50 PM

14. There are no current or anticipated fees or charges to be paid by unit owners for the use of common elements or other facilities related to the Project; provided, however, unit owners do pay as a component of their assessments certain charges associated with the use of adjoining recreational amenities owned exclusively by Spinnaker Resorts, Inc. a Florida Corporation, as well as fees associated with Developer owned and supplied water and sewer services, if any.

15. The Developer is under no obligation to build all improvements and amenities contained within the Project or any other phases of the Project.

16. The green belt common areas and the parking lot to be constructed within the Project comprise the only common condominium elements. The Developer is not obligated to build any other improvements or amenities of whatever nature.

17. Developer reserves the right under the Declaration of Condominium to develop additional property located adjacent to the Project of and reserves the right to grant use and access rights over roads and common areas of Palace View South By Spinnaker Condominium. The maximum number of condominium units which the Developer reserves the right to construct is 242 and the maximum number of condominium units per acre which the Developer reserves the right to construct is 35. These numbers are subject to change, however, in that it is impossible for the Developer to currently ascertain the precise nature and scope of future phases of the Project.

18. The Developer intends that all future condominium units will be residential in nature; however, the Developer makes no guaranty or representation regarding the exact nature of the use of the future condominium units

19. Developer's rights as reserved under the Declaration of Condominium include an easement upon the common elements of the Project for the purpose of constructing additional units adjacent thereto and to provide all utilities to any additional condominium units; to elect members of the property owners association Board of Directors for a period of time; and to expand the scope of the condominium by adding additional units thereto.

20. Every condominium unit owner's interest in the common elements will be changed by the exercise of any of the Developer's development rights, including, without limitation, the construction and addition of future condominium units to the Project.

21. All additional condominium units constructed by the Developer by virtue of its rights under the Declaration of Condominium shall be compatible with the existing condominium units in terms of architectural style and quality of construction. The Developer, however, reserves the right to alter and amend at its discretion the size and location of any such future units.

22. As to any other improvements that the Developer contemplates constructing on the limited common elements, the Developer offers no assurances as to the nature of improvements that may be created.

23. Pursuant to any development rights reserved by the Developer, the Developer makes no assurance as to any limitations of the location of any buildings which may be made within any part of the Project.

24. The Developer makes no assurance as to the status of any limited common elements regarding the type, size, scope or nature of limited common elements created pursuant to any development right reserved by the Developer.

25. Pursuant to any development rights reserved by the Developer, the Developer makes no assurance that the proportion of limited common elements to condominium units created will be approximately equal to the proportion existing within other parts of the Project

26. The Developer makes no assurance that all restrictions in the Declaration of Condominium affecting use, occupancy and alienation of condominium units shall apply to any condominium units created pursuant to any development right reserved by the Developer.

27. None of the assurances referenced throughout this agreement shall be applicable in the event that any development right is not exercised by the Developer.

28. The Developer reserves the right to submit all condominium units to a timeshared form of ownership. The following condominium units are the only condominium units which will be definitively subjected to a timeshared form of ownership upon completion of construction: Units No 711 through 944B, inclusive.

29. The developer reserves the right to develop 52 timeshare intervals per unit within the Project. The total number of timeshare intervals which the Developer reserves the right to develop, will depend upon the number of units which the Developer, in fact, constructs.

30. The minimum duration of any timeshared form of ownership created pursuant to the Declaration shall be forty (40) years. This term may be extended by vote of all timeshare owners.

31. The creation of timeshare interests will not affect the enforceability of the Association for lien for assessments provided for in Section 448.3-116 of the Missouri Statutes.

Palace View South by Spinnaker, LLC

By: Spinnaker Resorts, Inc., a Florida Corporation, its managing member

By: _____

Its: _____


Date: 02/14/2015

The undersigned hereby acknowledge receipt of a copy of this Original Sales Certificate pertaining to the sale of Unit 742 of Palace View South By Spinnaker Condominium on this 14 of February, 2015.

_____
Forrest L Albin

_____
Katherine M Albin

Electronically Filed - Taney - December 02, 2019 - 03:50 PM

| Last Name | First Name |
|---|---|
| Albers | James and Margaret |
| Albin | Forrest and Katherine |
| Albright | Paulette & Richard |
| Amos | Roger and Shirley June |
| Barefield | Ralph and TaWanna |
| Barger | Karen & Kent |
| Bates | Raymond |
| Beaver | Ferman (Clyde) and Ruschale |
| Bernstein | William and Mary |
| Blocker | Robert and Beverly |
| Bottoms | Pat and Gary |
| Buster | Delores |
| Cadden | John & Mary Nell |
| Chapman | Carolyn |
| Coble | Clifford and Patricia |
| Copridge | Valerie and Clarence |
| Darling | Dee |
| Davis | Doris & Charles |
| Davis | Roger Elliott |
| Day | Linard and Pamela |
| Decker | Clyde and Opal |
| Derossett | Kevin and Lycinda |
| Dooley | Emmitt & Gloria |
| Doseck | Michael & Sheila |
| Ehlmann | Arlie |
| Flood | Carl and Margie |
| Freund | Joyce |
| Gano | Jerry and LaDonna |
| Gilbertson | Cheryl & Dennis |
| Gilbreath | Billy and Jane |
| Grantham | Jerry and Patricia |
| Gray | Henry and Dorothy |
| Guest | Yovounka |
| Halloran | H. James and C.S. |
| Harcrow | Chris & Marianne |
| Hennessey | David and Toni |
| Hensley | Matt |
| Hill | William and Lynda |
| Hinson | Don and Diane |
| Hubbard | Charles and Wendy |
| Julian | Carol and Sherry Bilby |
| Justice | Bruce & Vickie |

| Keller | Jerry |
|---|---|
| Leggett | Doris and James |
| Lenz | Leonard and Annette |
| Lovewell | Wendell and Pam |
| Marzolf | Ricci and Laurie |
| Mayo | Thomas and Judy |
| Miller | Helen Ann |
| Moody | Randall and Brenda |
| Moses | Billy and Janet |
| Netters | Johnny and Joy |
| Petty | Cynthia and Clifton |
| Pierson | Max and Patricia |
| Pue | Edward and Teresa |
| Randa | Dermot and Suzanne |
| Reisinger | Robbin and Linda |
| Reynolds | Marion and Nancy |
| Ritter | William and Karen |
| Rubottom | Allen and Dorothy |
| Ruzicka | Victoria |
| Scott | Terry and Murna |
| Sehon | James and Patricia |
| Sitzberger | David and Kathleen |
| Smith | Wesley/H.M.S. of Arkansas |
| Smith | Stephen & Karen |
| Spencer | Henry and Blandina |
| Splane | Keith |
| Stamm | Alfred and Mary |
| Strasser | Kenneth and Anne |
| Sullivan | James and Ronda |
| Sutton | Sharron |
| Taul | Tom and Chris |
| Taylor | Stephen and Sally |
| Tenpenny | Clifford and Rita |
| Thompson | Robert and Marcia |
| Tucker | Philas (PC) and Judy |
| Ward | Kenny and Diana |
| Wefer | Herbert and Belinda |
| Westmorland | Susan |
| Whittaker | Larry and Marie |
| Willhite | Jerry and Marie |
| Willis | Kent and Rhonda |
| Wirth | Wayne and Connie |
| Zeller | Herbert & Sandra |



# IN THE 46TH JUDICIAL CIRCUIT, TANEY COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>JEFFREY M MERRELL | **Case Number: 1946-CC00255** |
| Plaintiff/Petitioner:<br>FORREST ALBIN<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>M SCOTT MONTGOMERY<br>1050 E WALNUT<br>SPRINGFIELD, MO 65806 |
| Defendant/Respondent:<br>RESORT SALES MISSOURI, INC | Court Address:<br>266 MAIN STREET<br>PO BOX 129<br>FORSYTH, MO 65653 |
| Nature of Suit:<br>CC Other Tort | |

(Date File Stamp)

## Summons in Civil Case

The State of Missouri to: **RESORT SALES MISSOURI, INC**
Alias:

**RA SCOTT WEST**
**700 BLUE MEADOWS ROAD**
**BRANSON, MO 65616**

*COURT COURT SEAL OF*

*TANEY COUNTY*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

| 12/03/2019 | /s/ Amy Strahan,tm |
|---|---|
| Date | Clerk |

Further Information:

## Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: _____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____ | _____
Printed Name of Sheriff or Server | Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____ | _____
Date | Notary Public

| **Sheriff's Fees, if applicable** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

Case 6:20-cv-03004-BP   Document 1-1   Filed 01/02/20   Page 29 of 30



# IN THE 46TH JUDICIAL CIRCUIT, TANEY COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>JEFFREY M MERRELL | **Case Number: 1946-CC00255** |
| Plaintiff/Petitioner:<br>FORREST ALBIN<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>M SCOTT MONTGOMERY<br>1050 E WALNUT<br>SPRINGFIELD, MO 65806 |
| Defendant/Respondent:<br>RESORT SALES MISSOURI, INC | Court Address:<br>266 MAIN STREET<br>PO BOX 129<br>FORSYTH, MO 65653 |
| Nature of Suit:<br>CC Other Tort | |

(Date File Stamp)

## Summons in Civil Case

The State of Missouri to:  **SPINNAKER RESORTS, INC**
                          **Alias:**

**RA MISSOURI SECRETARY OF STATE**
**600 W. MAIN STREET**
**JEFFERSON CITY, MO 65102**
*COURT SEAL OF*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

*TANEY COUNTY*

| 12/03/2019 | /s/ Amy Strahan,tm |
|---|---|
| Date | Clerk |

Further Information:

## Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with
_____, a person of the defendant's/respondent's family over the age of
15 years who permanently resides with the defendant/respondent.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to:
_____ (name) _____ (title).
☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____        _____
         Printed Name of Sheriff or Server                              Signature of Sheriff or Server
             **Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*                    Subscribed and sworn to before me on _____ (date).

                            My commission expires: _____        _____
                                                              Date                              Notary Public

| **Sheriff's Fees, if applicable** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

Case 6:20-cv-03004-BP   Document 1-1   Filed 01/02/20   Page 30 of 30